IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

IN THE MATTER OF THE SEARCH OF

**Six electronic devices currently in the custody of the Drug Enforcement Administration**

Case No. 6:25cr234

~~(Under Seal)~~ JA

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Kimbrell C. Dodder, Jr., being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—various electronic devices (described in Attachment A)—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am an investigative or law enforcement officer of the United States within the meaning of Title 21, United States Code, Section 878. I have been a Special Agent of the DEA since October 2015. I received 19 weeks of training in narcotics investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. Following graduation from the DEA Academy, I have been assigned to the offices in Jackson, Mississippi, Atlanta, Georgia, and Greenville, South Carolina. Prior to my employment as a Special Agent with the DEA, I was employed as a narcotics agent by the Mississippi Bureau of Narcotics for approximately eight years.

3. I have written and submitted to courts numerous affidavits in support of search warrants, pen registers, Title-III wire intercepts, and electronic tracking device (ETD) warrants. I have served as the lead case agent in numerous wiretap investigations. I am familiar with the terminology and distribution methods used by drug traffickers, as well as the methods of packaging, transporting, and ingesting numerous types of controlled substances. I have received training, both formal and informal, in the investigation of violations of controlled substance offenses, including several schools regarding general narcotics investigation. I have participated in the investigation, arrest, and prosecution of numerous drug traffickers. During my law enforcement career, I have participated in investigations of narcotics trafficking, money laundering, complex conspiracies, and among other things, have conducted or participated in surveillances, the execution of search warrants, and debriefings of informants.

4. Through my training, education, and experience, I have become familiar with the manner in which narcotics traffickers and money launderers conduct their operations, including but not limited to, their methods of importing and distributing controlled substances, their use of cellular telephones (including using multiple phones at once to communicate with different members of a drug organization, and the frequent use of new/replacement phones), their use of counter surveillance techniques, and their use of numerical codes and coded and/or cryptic language, words, and references to conduct their transactions. Additionally, while involved in narcotics trafficking investigations, I have communicated with other federal, state and local law enforcement personnel who specialize or have expertise in this area.

5. As part of the aforementioned criminal investigations, I have training and experience dealing with electronic evidence and have prepared multiple search warrant affidavits supporting warrants for information maintained by telephone and internet service providers,

authorizing forensic searches of cellular telephones, computers, and other electronic devices. I know that drug dealers often keep photographs, messages, and other records of their drug distribution efforts on cellular telephones, computers, and electronic devices. And I know through this investigation, in particular, that target subject Tonny FREEMAN has used a cellular telephone to further his drug trafficking organization. I also know that FREEMAN has several Apple iPhone cellular telephones, and Apple users often have a distinct Apple ID allowing information from their cellular telephone and account information to be backed up in an Apple iCloud account. I know through training and experience that an Apple user's account is often backed up on their computer as well – and in this case, law enforcement seized a white in color Apple computer from FREEMAN's residence.

6.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7.  The electronic devices to be seized and searched are as follows:
    a. Black in color Samsung cellphone, bearing IMEI 355069172812006, located in the master bedroom, and contained in DEA Evidence Bag S001531217;
    b. Black and silver in color Apple iPhone, located in the master bedroom, and contained in DEA Evidence Bag S001531219;
    c. Black in color Samsung cellphone with a black case, located in the master bedroom, and contained in DEA Evidence Bag M000326200;
    d. Black and silver in color Apple iPhone with a black and clear case, located in the master bedroom, and contained in DEA Evidence Bag S001531218;
    e. Black and grey in color Alcatel flip phone, located in the office area of the residence, and contained in DEA Evidence Bag M000326187; and
    f. White in color Apple Computer, location in the office area of the residence, and contained in the Greenville DEA non-drug evidence vault.

These devices will be hereinafter collectively referred to as the "**TARGET DEVICES**." The **TARGET DEVICES** are in secure storage with the DEA in the District of South Carolina.

8.      The applied-for warrant would authorize the forensic examinations of the **TARGET DEVICES** for the purpose of identifying the electronically stored data particularly described in Attachment B.

## BACKGROUND INVESTIGATION

9.      In September 2021, Tonny FREEMAN ("FREEMAN") was intercepted over wire communications discussing kilogram quantities of cocaine during a DEA Atlanta investigation. As part of DEA Atlanta's investigation, law enforcement seized approximately 20 kilograms of cocaine from a drug courier in the Atlanta area who was intercepted discussing drug transactions with FREEMAN on multiple occasions. DEA Greenville then began investigating FREEMAN and confirmed through source information and controlled purchases of heroin that FREEMAN was distributing cocaine and heroin in the District of South Carolina.

10.     On April 5, 2022, the Honorable Henry M. Herlong, Jr., Senior United States District Judge for the District of South Carolina, signed an order authorizing agents to begin intercepting wire communications over 470-573-4665 (TT#1), used by FREEMAN. Subsequently, on May 4, 2022, Judge Herlong signed an order authorizing agents to continue intercepting wire communications over TT#1.

11.     On May 31, 2022, DEA's investigative team executed a series of search warrants, including at two residences belonging to or associated with FREEMAN located at 103 Finley Avenue, Greer, SC, and 414 King Street, Greer, SC. During the search of FREEMAN's residences, agents seized approximately nine kilograms of cocaine and approximately two kilograms of heroin, in addition to a quantity of marijuana. Agents also seized the TARGET DEVICES from FREEMAN's residence at 103 Finley Avenue.

4

## PROBABLE CAUSE

<u>May 1, 2022 Intercepted Call between FREEMAN and David HARGROVE</u>

12. On May 1, 2022, at approximately 2:16 PM, agents intercepted a conversation between FREEMAN, utilizing TT#1, and David HARGROVE, utilizing 786-290-8865. A relevant portion of the call went as follows:

> FREEMAN: "He two hours out."
>
> HARGROVE: "Yeah, he must've ducked at one of them stops, you know."
>
> FREEMAN: "Yeah."
>
> HARGROVE: "Yeah, he two hours out from you."
>
> FREEMAN: "Okay."
>
> HARGROVE: "Yeah, give him $6,000."
>
> FREEMAN: "Huh?"
>
> HARGROVE: "Give him $6,000."
>
> FREEMAN: "Give him $6,000 and let him go on?"
>
> HARGROVE: "Yeah. I'ma call you back. I'm damn near by the Florida line in about another hour or so."

13. Based on my training, experience, and the investigation to date, I believe HARGROVE confirmed a drug courier would meet with FREEMAN in approximately two hours ("he two hours out from you"). HARGROVE told FREEMAN to give the courier $6,000 for delivering drugs ("Give him 6,000."). FREEMAN then confirmed that he did not need to give the courier full payment for the drugs that he delivered ("Give him $6,000 and let him go on?").

14. On the same date, at approximately 4:23 PM, Spartanburg County Investigator Kurt Jacobsen observed an eighteen-wheeler tractor and trailer park on the side of the road in front of

1431 E. Poinsett Extension, Greer, South Carolina, a business owned by FREEMAN's close associate, Johnny MILLER. Investigator Jacobsen then observed FREEMAN and MILLER standing outside the gate of the business. FREEMAN was then handed a black bag by the driver of the eighteen-wheeler. MILLER, FREEMAN, and the driver then walked into the fenced area of the business and out of sight of agents. A short time later, the truck driver returned to the eighteen-wheeler and left the area.

15. Based on the intercepted calls and surveillance, I believe the driver of the eighteen-wheeler delivered drugs to FREEMAN and MILLER and received payment for delivering the drugs. Following the driver's departure, HARGROVE arrived at FREEMAN's residence during the late evening hours of May 1, 2022. HARGROVE left FREEMAN's residence during the early morning hours of May 3, 2022, and was stopped while driving by local law enforcement in Alachua County, Florida. During a search of HARGROVE's vehicle, officers located and seized approximately $400,000 in U.S. currency inside of a black bag. When asked about the money, HARGROVE lied about where it came from and otherwise did not provide any additional information to law enforcement about his activities. HARGROVE was not arrested, and the money was the only thing seized from his vehicle.

### Intercepted Calls between FREEMAN and Selena PALACIOS

16. On May 26, 2022, agents intercepted a conversation between FREEMAN, using TT#1, and Selena PALACIOS, using TT#17. A relevant portion of the call went as follows:

>PALACIOS: "How you doing?"
>
>FREEMAN: "Everything all right, coast clear?"
>
>PALACIOS: "No."
>
>FREEMAN: "Uh-huh."

PALACIOS: "Yeah."

FREEMAN: "Whatcha'll all working on?"

PALACIOS: "Uh, 2-4."

FREEMAN: "Huh?"

PALACIOS: "I'm trying to, I'm trying to go look at them today. That way you know, I can make sure."

FREEMAN: "Uh-huh."

PALACIOS: "'Cuz, you know, I don't want no fuck ups. That's why I wanted to see how many you wanted to see. You know."

FREEMAN: "You gotta see what's happening first."

PALACIOS: "Okay. You want me to see how many they got?"

FREEMAN: "Yeah, just call me back."

PALACIOS: "Okay, I'll call you back when it's clear."

FREEMAN: "All right."

PALACIOS: "Okay, bye."

17.     In the above conversation, agents believe FREEMAN asked PALACIOS what she was charging for a kilogram of cocaine ("Whatcha'll all working on?"), and PALACIOS said $24,000 ("Uh, 2-4"). PALACIOS said she was going to look at the cocaine ("I'm trying to go look at them today") and would call FREEMAN once she had drugs ("I'll call you back when it's clear").

18.     On May 27, 2022, agents intercepted a phone call between PALACIOS and FREEMAN that indicated PALACIOS and her significant other, Freddie GARCIA, were in Greer, South Carolina. A short time later, an agent observed PALACIOS and Freddie

GARCIA meet FREEMAN near his residence at 103 Finley Avenue, Greer, South Carolina. Based on geo-location data from TT#1 and TT#17, agents were able to determine that PALACIOS, GARCIA, and FREEMAN went to 103 Finley Avenue. Based on the intercepted phone calls and surveillance, agents believe PALACIOS and GARICA delivered a cocaine sample to FREEMAN.

19. On May 28, 2022, agents intercepted a conversation between FREEMAN, using TT#1, and PALACIOS, using TT#17. A relevant portion of the call went as follows:

> PALACIOS: "Um, I was telling you that if you needed them by tonight or can I go early, early in the morning? Like around four."
>
> FREEMAN: "Okay, in the morning, it'll be fine."
>
> PALACIOS: "In the morning – it's fine?"
>
> FREEMAN: "Yeah."
>
> PALACIOS: "Okay, alright, so I'll be there at that time."
>
> FREEMAN: "Okay."
>
> PALACIOS: "Okay. Uh, but did you see my message that there was only five? Is that okay?"
>
> FREEMAN: "Okay."
>
> PALACIOS: "Alright."
>
> FREEMAN: "They the same?"
>
> PALACIOS: "Yeah, the same thing."
>
> FREEMAN: "Okay."

20. In the above conversation, agents believe PALACIOS asked FREEMAN if she could bring the additional cocaine on the morning of May 29, 2022 ("In the morning – it's

fine?"), and FREEMAN said yes ("Yeah."). PALACIOS then said only five kilograms of cocaine were available ("Uh, but did you see my message that there was only five?"). FREEMAN verified that it was the same type of cocaine as the sample he had previously received ("They the same?"), and PALACIOS confirmed that it was the same cocaine ("Yeah, the same thing.").

21.    On May 29, 2022, during the early morning hours, agents intercepted a conversation between FREEMAN and PALACIOS, during which PALACIOS indicated she was close to FREEMAN's residence. At approximately 6:30 AM, an agent observed a vehicle driven by PALACIOS, with GARCIA as a passenger, arrive at FREEMAN's residence, 103 Finley Avenue, Greer, South Carolina, and stay less than an hour.

22.    Based on the surveillance and intercepted calls, agents believe GARCIA and PALACIOS delivered at least five kilograms of cocaine to FREEMAN's residence.

### Search Warrants Executed at Tonny FREEMAN's Residences

23.    On May 31, 2022, DEA's investigative team executed a series of court-authorized search warrants. As part of their investigation, the investigation team executed search warrants at FREEMAN's two known residences, 414 King Street, Greer, South Carolina, and 103 Finley Avenue, Greer, South Carolina.

24.    During the search of 414 King Street, agents and investigators located and seized the following: approximately two kilograms of heroin, fifteen pounds of marijuana, and approximately $100,000 in U.S. currency.

25.    During the search of 103 Finley Avenue, agents and investigators located and seized the following: approximately nine kilograms of cocaine, four firearms, over $100,000 in U.S. currency, and the **TARGET DEVICES**.

26. FREEMAN was present at the 103 Finley Avenue residence when agents arrived to execute the search warrant. Following the search of the residence, agents advised FREEMAN of his *Miranda* warnings, and FREEMAN agreed to speak with the agents. During the conversation, FREEMAN stated that the kilograms of cocaine had been supplied to him by a Hispanic male and female, known to agents as Selena PALACIOS and Freddie GARCIA. FREEMAN also detailed a previous drug transaction involving a Hispanic male, known to agents as Freddy Leonel Reyes MARTINEZ, during which he received approximately four kilograms of cocaine.

27. DEA also executed a search warrant at MARTINEZ's residence in Douglasville, Georgia, on May 31, 2022. During the search of MARTINEZ's residence, agents located and seized approximately 12 kilograms of heroin, multiple firearms, and approximately $60,000 in U.S. currency.

## STATUS OF THE TARGET DEVICES

28. The **TARGET DEVICES** have been in DEA's custody since they were seized from FREEMAN's residence on May 31, 2022. In my training and experience, I know the **TARGET DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET DEVICES** first came into the possession of law enforcement.

## DEVICE CAPABILITIES

29. Based on my training, experience, and research, I know that all of the cellular phones contained within the **TARGET DEVICES** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, device for

sending and receiving emails and SMS messages, as well as an internet browser which allows a user to post text, pictures, and videos on various social media sites.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

31. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICES** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

33. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.

## CONCLUSION

34. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICES** described in Attachment A to seek the items described in Attachment B for evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

(SIGNATURES ON FOLLOWING PAGE)

Respectfully submitted,

*s/ Kimbrell C. Dodder, Jr.*
Special Agent Kimbrell C. Dodder
Drug Enforcement Administration

SWORN TO ME VIA TELEPHONE
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE

This __9th__ day of June, 2022
Greenville, South Carolina

The Honorable Jacquelyn D. Austin
United States Magistrate Judge
District of South Carolina

## ATTACHMENT A

The property to be searched is:

a. Black in color Samsung cellphone, bearing IMEI 355069172812006, located in the master bedroom, and contained in DEA Evidence Bag S001531217;

b. Black and silver in color Apple iPhone, located in the master bedroom, and contained in DEA Evidence Bag S001531219;

c. Black in color Samsung cellphone with a black case, located in the master bedroom, and contained in DEA Evidence Bag M000326200;

d. Black and silver in color Apple iPhone with a black and clear case, located in the master bedroom, and contained in DEA Evidence Bag S001531218;

e. Black and grey in color Alcatel flip phone, located in the office area of the residence, and contained in DEA Evidence Bag M000326187; and

f. White in color Apple Computer, location in the office area of the residence, and contained in the Greenville DEA non-drug evidence vault.

Collectively, the **TARGET DEVICES**. The **TARGET DEVICES** are currently located in secure storage with the DEA within the District of South Carolina. This warrant authorizes the forensic examination of the **TARGET DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

All information and objects that constitute fruits, contraband, evidence, and instrumentalities of violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances) and 21 U.S.C. § 846 (conspiracy to possess with intent to distribute controlled substances) involving FREEMAN and/or co-conspirators in the subject offenses, known and unknown, including the following:

a. Records of any type of communication with FREEMAN and/or any other co-conspirator involved with criminal behavior. These include but are not limited to phone calls, voice messages, text messages, emails, secure and encrypted messages conducted through social media or mobile applications to include text, voice, and video messages.

b. Business and bank account information related to FREEMAN or any of his co-conspirators. These records include but are not limited to electronic documents, bank statements, money transfers, financial and business applications, ledgers, photographs, videos, and government records.

c. Photographs and videos (and the metadata associated with photos or videos, denoting information such as the date, time, and location where a certain electronic file was created) of items associated with FREEMAN, his co-conspirators, and drug distribution.

d. Electronic GPS data denoting locations historically visited by the **TARGET DEVICES**.

e. Any and all records of property, both real and personal, owned or possessed by FREEMAN.

f. Any records of the **TARGET DEVICES'** account information, and other financial records associated with the payment of fees with respect to the **TARGET DEVICES**.

g. Internet browsing history and all other information associated with the **TARGET DEVICES'** access and navigation to the internet.

h. Evidence of user attribution showing others who may have used or owned the **TARGET DEVICES** during the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.